IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| CONTROVERSY MUSIC, ET AL., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| V. | § | Cause No. 6:06-CV-157 |
| | § | |
| DOWN UNDER PUB TYLER, INC., | § | |
| ET AL., | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER ON
<u>PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

Pending before the Court is the Plaintiffs' Motion for Summary Judgment and Brief in Support (Docket Entry No. 25). Having considered Plaintiffs' motion and the accompanying evidence, and seeing that there is no opposition to the facts or evidence contained in the motion, the Court is of the opinion that the Plaintiffs' motion for summary judgment should be granted.

<u>BACKGROUND</u>

This is an action for copyright infringement arising from the unauthorized public performance of Plaintiffs' copyrighted musical compositions at Down Under Pub & Grub, at a restaurant and night club located in Tyler, Texas.

The undisputed facts, as supported by the Plaintiffs' summary judgment evidence, are as follows. From August 2003 to April 2006, Defendants Down Under Pub Tyler, Inc., Kelly

St. Andre, and Wayne Neil (collectively "Defendants") owned and operated an establishment offering public entertainment, known as Down Under Pub & Grub, located in Tyler, Texas ("Down Under Pub (Tyler)").

On June 10, 2005, the five musical compositions at issue in this lawsuit—*Kiss*, *1999*, *Give It To Me Baby*, *Wild Thing*, and *Shooting Star*—were publicly performed at Down Under Pub (Tyler). The Plaintiffs—Controversy Music, Jobete Music Co., Inc., Varry White Music, Ex VW, Inc., Loc'd Out Music, and WB Music Corp.—own the respective copyrights to these five musical compositions.[1]

Each plaintiff is a member of the American Society of Composers, Authors and Publishers—commonly known by its acronym "ASCAP"—which licenses the nondramatic public performance of its members' copyrighted music. Plaintiffs have granted to ASCAP a nonexclusive right to license non-dramatic public performances of their copyrighted musical compositions. On behalf of the plaintiffs and ASCAP's more than 275,000 other members, ASCAP licenses thousands of music users, including radio and television networks, radio and television stations, restaurants, nightclubs, and other establishments whose owners desire to lawfully perform copyrighted musical compositions in the ASCAP repertoire.

---

[1] Schedule A to the Complaint (Docket Entry No. 18) sets out the titles, writers, copyright owners, and copyright registration numbers for each of the musical compositions at issue in this suit.

The summary judgment evidence establishes that ASCAP representatives tried on numerous occasions from June 2004 through April 2005 to inform the Defendants of the necessity and availability of a license to perform the songs contained in ASCAP's repertoire of musical compositions. All of ASCAP's licensing offers—which were made by telephone, by mail, and during personal visits by ASCAP representatives—were ignored or rejected by Defendants. This evidence indicates that, prior to Defendants' June 10, 2005 performance of Plaintiffs' music, the Defendants were aware of their obligations to obtain permission for public performances of copyrighted music at their establishment. Defendants were also aware that Down Under Pub (Tyler) was not licensed to perform copyrighted musical compositions in the ASCAP repertoire.

Plaintiffs' filed this cause of action on April 7, 2006 for copyright infringement seeking the remedies provided by the United States Copyright Act, including an injunction prohibiting further infringing performances of copyrighted musical compositions in ASCAP's repertoire; statutory damages in the amount of $5,000.00 per infringement, for a total damages award of $25,000.00; and costs, including reasonable attorney's fees. The Defendants answered on December 21, 2006. Plaintiffs filed this motion for summary judgment on March 13, 2007 on the grounds that there is no genuine issue of material fact as to the elements of Plaintiffs' claims for copyright infringement and that Defendants are jointly and severally liable for all damages. The Defendants' response was due on March 29, and to date no response has been filed.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The moving party must show initially that there is no genuine issue of any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 256 (1986). A fact is "material" if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson*, 477 U.S. at 248; *Merritt-Campbell, Inc.*, 164 F.3d at 961.

Once the moving party has satisfied its burden, the party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials in its pleading, but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Merrit-Campbel, Inc.*, 164 F.3d at 961.

Pursuant to Local Court Rule CV-56, a party filing a motion for summary judgment must include a "Statement of Material Facts," and any party opposing the motion should serve a response that includes a "Statement of Genuine Issues." Local Rule CV-56(a), (b), (c). Both the motion and the response should be accompanied by proper summary judgment evidence. *See* FED. R. CIV. P. 56. Local Rule CV-56 further states that

> the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" . . . as supported by appropriate summary judgment evidence. *The court will not scour the record in an attempt to determine whether the record contains an undesignated genuine issue of material fact for trial before entering summary judgment.*

Local Rule CV-56(c) (emphasis added).

Because the Defendants have not responded to this motion, all facts in the Plaintiffs' motion that are properly supported by affidavits and admissible evidence are taken as admitted by Defendants.

## DISCUSSION

### A.   Copyright Infringement

The United States Copyright Act bestows upon the owner of a copyright the exclusive right to do or authorize the public performance of a copyrighted musical composition. 17

U.S.C. § 106(4). A person who violates a copyright owner's exclusive right may be held liable as a copyright infringer. 17 U.S.C. § 501(a). The Defendants may be held liable for copyright infringement arising from unauthorized public performance if the Plaintiffs prove each of the following: (1) that the Plaintiffs own and properly registered the copyrights of the musical compositions involved in this action; (2) that the musical compositions were performed publicly; and (3) that the Defendants had not received permission from any of the Plaintiffs or their representatives for such performance. *See Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 577 (E.D. Tex. 1993).

The Defendants have admitted that the Plaintiffs own the copyrights to each song identified in the Complaint, and that the Plaintiffs have registered their songs as reflected in Schedule A to the Complaint. (App. 101, 144, 153, 157.) Accordingly, there is no genuine issue of material fact as to the first element.

As to Defendants' public performance of the compositions, the Plaintiffs offer the Declaration of Jim Casanova, an individual hired by ASCAP to visit the Down Under Pub in Tyler on June 10, 2005 for the purpose of making a list of songs he heard performed there on that evening. Mr. Casanova's Declaration indicates that the five songs alleged in the Complaint were publicly performed at the Down Under Pub in Tyler on June 10, 2005. (App. 1–14A.) Furthermore, Defendants stated in their admissions and deposition testimony that they did not know whether or not any of the subject songs were performed on June 10, 2005, and that they do not keep records of what songs are performed. (App. 103, 135, 143,

156–58.) Because the Defendants have not challenged the Plaintiffs' evidence on this point, the Court finds that there is no genuine issue of material fact as to whether the Defendants presented a public performance of the Plaintiffs' musical works.

As to the third element, the Defendants have not pleaded a defense of "license" or permission to present a performance of any of the subject works. The Defendants also have admitted that they did not have a license to present a public performance of the subject works in June 2005. (App. 102, 153.) Accordingly, there is no genuine issue of material fact as to whether the Defendants had obtained the Plaintiffs' permission to present the June 10, 2005 public performances of the Plaintiffs' musical works.

Because the undisputed evidence satisfies each element of Plaintiffs' infringement claims, the Court finds that summary judgment as to the Plaintiffs' infringement claims should be granted.

**B.   Defendants' Joint Liability for Copyright Infringement**

Plaintiffs allege that Defendants Down Under Pub Tyler, Inc, Neil, and St. Andre are jointly liable for the infringement. All participants in copyright infringement are jointly liable as tortfeasors. *See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir. 1972); *Charles Deitcher Productions, Inc. v. Milano Restaurant, Inc.*, 21 U.S.P.Q.2d 1877, 1879 (E.D. Tex. 1991), *aff'd* 24 U.S.P.Q.2d 1794 (5th Cir. 1992). Liability for copyright infringement falls not only on the person who actually performed the copyrighted music, but also on persons who (1) had the right and ability to control the

infringing activity and (2) had a direct financial interest in that activity. *Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513 (4th Cir. 2002) (noting business owner's liability for infringement under theory of vicarious liability); *Crabshaw Music v. K-Bob's of El Paso, Inc.*, 744 F. Supp. 763, 767–68 (W.D. Tex. 1990) (same).

Plaintiff's unopposed evidence establishes that Defendant Down Under Pub Tyler, Inc., was the corporation that operated Down Under Pub (Tyler), leased the premises, and exercised day-to-day management of the establishment. (App. 74–75, 83–84, 87.) Defendants Neil and St. Andre were officers, directors, and the primary shareholders of that corporation. (App. 73–77, 79, 82, 84, 87, 96, 97, 115, 161.) Defendants Neil and St. Andre have admitted that they had primary control, management, operation, and maintenance of the affairs of Down Under Pub (Tyler) in June 2005. (App. 89, 153.)

Defendant Down Under Pub Tyler, Inc., is properly held liable for copyright infringement because it owned and operated the establishment where the performances occurred. *See Charles Deitcher Prods., Inc.*, 21 U.S.P.Q.2d at 1879; *Crabshaw Music*, 744 F. Supp. at 767–68. Defendants Neil and St. Andre are properly held vicariously liable for copyright infringement because, as officers, directors, and primary shareholders of Down Under Pub Tyler, Inc., the operating entity for Down Under Pub (Tyler), these two individuals had the right and ability to control the infringing activity as well as a direct financial interest in the infringing activity. *See, e.g., id.* at 767–68; *Fermata Int'l Melodies,*

*Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1262 (S.D. Tex. 1989), *aff'd*, 915 F.2d 1567 (5th Cir. 1990).

Because the Defendants had the right and ability to control the infringing activity, and because the Defendants each had a direct financial interest in the infringing activity, the Defendants are jointly liable for the above-established copyright infringement.

**C.     Remedies**

**1. Injunctive Relief**

The Copyright Act authorizes the Court to grant "temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  When an infringement occurs, the copyright owner is entitled to an injunction prohibiting further infringing performances. *See Twentieth Century Music Corp. v. Frith*, 645 F.2d 6, 7 (5th Cir. 1981); *Fermata*, 712 F. Supp. at 1262; *Canopy Music, Inc. v. Harbor Cities Broadcasting, Inc.*, 950 F. Supp. 913, 916 (E.D. Wis. 1997).  As has been established in the affidavit of Douglas Jones, ASCAP representatives tried on numerous occasions to secure a licensing agreement with the Defendants and Defendants were clearly aware of the necessity of obtaining permission to publicly perform protected musical compositions without a license.  (App. 15–21.)  This is evidence that Defendants have purposefully and consciously disregarded the rights of the Plaintiffs, entitling the Plaintiffs to an injunction prohibiting the Defendants from performing Plaintiffs' copyrighted songs without permission.  Moreover, as has been recognized by other courts, the Plaintiffs

represent the interests of all ASCAP members whose music could be infringed by Defendants, and the Court therefore finds that injunctive relief should protect all music in the ASCAP repertoire. *See Canopy Music*, 950 F. Supp. at 916; *Meadowgreen Music v. Voice in the Wilderness Broadcasting, Inc.*, 789 F. Supp. 823, 828 (E.D. Tex. 1992).

### 2. Statutory Damages

Plaintiffs also seek statutory damages under 17 U.S.C. § 504(c). Under § 504(c)(1), "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If a defendant's infringement was committed willfully, the court has discretion to increase an award of statutory damages to no more than $150,000 per work. 17 U.S.C. § 504(c)(2). Infringement is willful if the Defendant had knowledge that his conduct represented infringement or recklessly disregarded the possibility that his conduct might constitute infringement. *See Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2nd Cir. 1999); *Broadcast Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 236 (5th Cir. 1988). The court has discretion to award damages within the statutory limits. *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir. 1987).

The statutory damages awarded for copyright infringement should be sufficient to deter future copyright infringement. *See F.W. Woolworth v. Contemporary Arts*, 344 U.S. 228, 233 (1952); *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989), *cert. denied*, 494 U.S. 1017 (1990). Plaintiffs ask the Court to award $5,000 per infringement, for a total damage award of $25,000. Plaintiffs indicate that the Defendants' failure to pay ASCAP fees for Down Under Pub (Tyler) from June 2004 through the end of 2006 has resulted in fee "savings" of $6,850.[2] (App. 19.) ASCAP also incurred investigation expenses in the amount of $601.82. (App. 19.)

The undisputed evidence indicates that Defendants knew that their conduct violated the copyrights of ASCAP members whose musical compositions were contained in the ASCAP repertoire, necessitating a finding that the Defendants' infringement was willful. The Court further finds that, given the Defendants' willful infringement, an award of $5,000 per infringement is just and sufficient to deter future copyright violations while promoting respect for the law. Plaintiffs have alleged five individual instances of copyright infringement. Accordingly, the Court finds that the Plaintiffs are entitled to summary judgment in the sum of $25,000 statutory damages.

---

[2] There is also evidence that Defendants do not have an ASCAP license for their Down Under Pub location in Frisco, Texas. Plaintiffs indicate that Defendants have avoided paying ASCAP license fees for the Frisco business through the end of 2006 in the amount of $8,650. (App. 20.) The Defendants' total savings by not paying the ASCAP fee is approximately $15,500.

### 3.     Costs and Attorneys' Fees

The Copyright Act grants courts the discretion to award the recovery of full costs and "and a reasonable attorney's fee . . . as part of the costs." 17 U.S.C. § 505; *see Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533, 534 (1994). The Fifth Circuit has stated that, though attorneys' fees in copyright cases are discretionary, they are "'the rule rather then the exception and should be awarded routinely.'" *Hogan Systems, Inc. v. Cybresource Intern., Inc.*, 158 F.3d 319, 325 (5th Cir. 1998) (quoting *McGaughey v. Twentieth Century Fox Film Corp.*, 12 F.3d 62, 65 (5th Cir. 1994). The *Fogerty* Court identified several factors that may be relevant in the exercise of the Court's discretion to award attorneys' fees to a prevailing party, which include frivolousness, motivation, objective unreasonableness concerning both factual and legal components of the case, and the need in particular circumstances to advance considerations of compensation and deterrence. 510 U.S. at 534 n.19 (citing *Lieb v. Topstone Industries, Inc*., 788 F.2d 151, 156 (3rd Cir. 1986)).

In this case, the Court finds no reason why this case should be the exception to the Fifth Circuit's general rule that attorneys' fees are routinely awarded. *See Hogan Systems*, 158 F.3d at 325. Liability is undisputed and the Defendants are willful infringers. Accordingly, the Court finds that Plaintiffs should be awarded their reasonable attorneys' fees in bringing this action. The Plaintiffs will be permitted to submit affidavit testimony to support their requested attorneys' fees.

**CONCLUSION**

For the above stated reasons, the Plaintiffs' Motion for Summary Judgment is hereby **GRANTED**. Plaintiffs are entitled to appropriate injunctive relief, statutory damages in the amount of $25,000.00 ($5,000.00 per count) for willful infringement of copyright, reasonable attorneys' fees, and post-judgment interest on all amounts awarded. It is therefore

**ORDERED** that, within twenty (20) days from the date of the entry of this order, Plaintiffs shall submit a proposed final judgment consistent with this opinion, as well as briefing and evidence supporting Plaintiffs' request for attorneys' fees and costs.

**It is SO ORDERED.**
**SIGNED this 11st day of May, 2007.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE